Johnson *vs.* City of Lexington.

ERROR TO THE FAYETTE CIRCUIT.

1. The 13th section of the act December, 1850, entitled, "an act to reduce into one, amend, and digest the several acts and amendatory acts incorporating the city of Lexington," though containing no express limitation, does not confer a power upon the city corporation to tax personal estate without the city, but is confined to property within the city.

2. The power of the city to tax for corporate purposes is the same as for *fire* and *school* purposes, upon the property within the city.

3. The power of taxation conferred by the legislature upon the city of Lexington, extends only to the property within the city, which means visible property, actually situated within the city, and not such property as has merely a legal constructive *status*, and which for some purposes, is regarded as being with its owner, wherever he may be.

4. The terms *personal property* and *personal estate*, as used in the Lexington city charter, does not embrace debts and other choses in action, but embrace only visible property.  (4 *B. Monroe*, 444.)

Case stated.

M. C. Johnson is a citizen of Lexington. On the — day of March, 1854, the mayor and council of the city of Lexington passed an ordinance, a copy of which is part of this agreed case. In a few days thereafter the city assessor called on the plaintiff to give in a list of his property for taxation, in the year 1854, under said ordinance. The plaintiff had previously given to the assessor a list of his property for taxation in said year, according to the laws as they existed at the time of giving said list. Upon this second application the plaintiff gave the assessor a list of his furniture, and all other personal property situate in the city of Lexington, which was attempted to be taxed, and stated on oath that the money he had at the date of said ordinance, and debts due to him by persons residing in the city of Lexington, did not exceed the amount in which he was indebted, and thereupon refused to give in, for taxation, the following claims which he admitted to be due to him, viz: A debt due to him by persons residing in New Orleans, of $2,000, which he did not expect to collect for some years to come; a debt due to him by persons residing

in Bourbon county, Kentucky; and $10,000 due to him by a person residing in Kenton, but not in Fayette county, or the city of Lexington. The plaintiff waives his right under the charter to move the board of council to correct the assessment, and he is deemed to have taken advantage of the section of the charter in regard thereto.

Upon the information thus given by the plaintiff, the assessor returned said several sums as liable for taxation, and the city of Lexington has assessed upon said sums a tax in accordance with said ordinance, and is about to place the same in the hands of the city collector for collection as other city taxes are payable in the year 1854. The plaintiff claims that the defendant has no right to levy or collect such a tax, and that said ordinance is, so far as it is attempted to tax anything not actually situated within the limits of the city of Lexington, and upon choses in action, and other things which have no locality, illegal and void.

That part of the ordinance of the city of Lexington which gave rise to this controversy is in the following words, to-wit: "Second. That section 22, digested ordinances, be so amended as to read, at the end thereof, that it shall be the duty of the assessor of this city, after having taken the list of all the property required by said section to be specifically listed, to require each one to deliver, on oath or affirmation, a statement or list of all his or her furniture, machinery, fixtures, watches, clocks, gold and silver plate, pianos, and other musical instruments, of which he or she may have been in possesion on the day on which this ordinance takes effect as owner, hirer, or agent, within the city; and said assessor shall assess the fair specie value of each item of property, in such statement or list, and enter the items, and their value, and the total of the whole, in separate columns, and opposite the names of their respective owners, hirers, or agents. After said list is taken the assessor shall then ask what said person was worth from all other sources

within the city, including the value of money, notes, and other personal property that may have been temporarily out of the city on the day on which this ordinance takes effect, and shall enter said amount in a separate column : *Provided, however*, the assessor shall take from the value of said property not specifically taxed, the amount of his or her indebtedness, and one hundred dollars."

The questions arising on this agreed case were, by consent, submitted to the judge of the Fayette circuit court. That court decided that the tax was legal and valid, and that the city authorities had power to impose it, and by argreement it is submitted to the court of appeals.

M. C. JOHNSON, for plaintiff—

Assigns for error, that the circuit judge erred in giving judgment for the city instead of the plaintiff.

The question in this case, whether the city of Lexington can, under its charter, tax money and choses in action belonging to one of its inhabitants, and especially choses in action due by persons residing elsewhere. I contend it cannot.

1. The original charter was passed in 1831, when money and choses were not taxable by the general laws of the State. The words "property" and "personal property" especially, when explained by the words which follow "goods, stock, manufactures," do not include money or choses in action.

2. In the ordinance the taxation is not uniform on every species of property assessed. By its provisions money and choses in action are subject to be assessed and taxed, but if a person is indebted, his money or choses in action are not assessed or taxed to the extent of his indebtedness; if he is not indebted, then his choses in action and money are assessed and taxed. Now it would be an intolerable burthen upon all business men if indebtedness should not be deducted. But it is not like a case of deducting a sum certain from each man's valuation—that would be uniform—

this exemption varies with each individual. The *uniformity* is required to be on each *description of property* assessed. Now the choses in action in the city, which are the description of property attempted to be taxed, are not uniformly taxed. Some are assessed, and some not—depending on whether they are indebted or not. If the uniformity is required to be as compared with other property subject to taxation, then the want of uniformity is more conspicuous. With other property there is no deduction from the assessed value; with this there is a deduction.

I do not contend that the deduction is unjust. If the city was authorized to *tax* what a man was *worth*, then his indebtedness would be deducted without any special provision; but the authority is not to tax the amount its citizens are *worth*, but to tax the *assessed value of the property* of its inhabitants.

3. If money or choses in action had been intended to be embraced under the words "property" or "personal property," the law would have made special provisions concerning it, fixing what should be included for taxation, and allowing a deduction on account of indebtedness.

4. There is no propriety in money or choses of a citizen being the subject of city taxation. The city affords it no protection. Its value is not increased by the paving of the street; by the city police; by cleaning of the streets; by the fire department, or by any other various municipal expenses or institutions. It is, in that respect, wholly different from the state government, which does afford protection, and really, by the remedies it affords, gives to choses in action, all or nearly all their value.

Railroad stock is real estate—not personal estate. Where the corporation partakes most of the realty, the stock is real estate.

Is the personal safety of a rich man more valuable than the personal safety of a poor man? Is the enjoyment of a rich man mere property?

JOHNSON
*vs.*
CITY LEXINGTON

WOOLLEY and ROBERTSON, for the city—

The sole question in this case is, whether a bond for money, payable to a citizen of Lexington by a non-resident of that city, or of the state of Kentucky, is liable to taxation by the municipality for its local use?

The legislature, as is obvious, and was decided in *Johnson v. The Commonwealth*, 7 *Dana*, having the right to tax such property for state purposes, might undoubtedly delegate the same power to the local authorities of Lexington, for its own municipal purposes. And we contend, that by the 12th and 13th sections of the "act to reduce into one, amend, and digest the acts and amendatory acts incorporating the city of Lexington," power was given to the mayor and council to tax all such property of its citizens.

The 12th section literally imparts authority to tax any property, of any kind wherever it may be, or to whomsoever it may belong. But the object of the grant, and the context of the entire enactment, constructively limit the power to immovable property within the limits of the city, to the citizens of Lexington, and to their personal property. And, though the 13th section does not literally embrace a *non-resident's* house or lot in the city, yet we cannot doubt that the legislature intended to embrace it, and that, by a proper interpretation, the statute does constructively embrace it. It is not so certain, however, that the act exempts from the local power of taxation any of the personalty of a citizen of Lexington, merely because it might be elsewhere than within that city. The letter of the act does not exonerate it, and there might be much doubt whether its policy should. Such property is deemed an element in the aggregate wealth of his city, and is considered, in law, as at his domicil; therefore, it might not be unjust or unreasonable to require him, to the extent of all such estate, to contribute to the expenses of his city's government and police.

But should the court, by a more restrictive interpretation, exclude from the local power of taxation such personal property of a citizen of Lexington as—being corporeal—can have an *actual situs,* and is not, in fact, within the city limits; still with unshaken confidence, we would contend that such property as a debt, which can have no actual *situs,* is included in the power of municipal taxation.

The money of a citizen of Lexington in his house or on deposit within the city, is certainly personal property *within the city,* and, as such, is subject to be taxed for the use of the city. Should the owner loan it to another residing out of the city, would not his estate nevertheless remain of the same denomination and value? And, though the same money would no longer be his, would not the value of it be as much his as itself ever was, and as much within his city, constructively and legally, as the money, when his, had been? The money, of whatever kind, was but the representative of a certain value. The bond substituted for the coin or bank notes is also a representative of the value of the money or debt, and the bond is with the obligee, at home, or is presumed to be so, as much as the money itself ever was or could have been—each being potentially, constructively, and actually, in the hands of the owner, and at his domicil.

*Mobilia sequuunter personam—immobilia situm. Mobilia non habent sequelam.* Debts can have no *situs* or *locale*—as a matter of law, of analogy, and of right, they follow the person of the creditor. Story, in his "Conflict of Laws," section 362, says this "doctrine is so firmly established that it would be a waste of time to go over the authorties." For confirmation, Lord Kaimes, Casaregis, and Livermore, on Conflict of Laws, may be *especially* referred to—see *Story, section* 399, *and notes.*

The same reasonable doctrine was recognized by this court in the case of *Johnson v. The commonwealth, supra,* for in that case this court decided that a debt

due by a citizen of Ohio to a citizen of Kentucky was personal property in Kentucky, and as such, subject to taxation by Kentucky. Consequently a debt due by a non-resident of Kentucky or of Lexington, to a citizen of the latter, should be deemed personal property in Lexington, and as such, liable to taxation for the benefit of that city. Such property could not be subject to taxation by the sovereign of the debtor, because it is not only of no value to him, but if it were taxed as his he would be subjected to double imposition, because his estate out of which the debt would be paid would also be taxed. Then it must be liable to taxation by the local jurisdiction of the creditor, whose property it is, or it cannot be taxed at all.

From these brief considerations the deduction is inevitable that Mr. Johnson's debts on non-residents of Kentucky, being his personal property within the city of Lexington, in judgment of law, is subject to taxation by the city authorities, unless this court should construe the charter as including only such personal property as is corporeal, and can therefore have an actual *situs* different from the legal. But this the court cannot do, as we think, for at least two good reasons—First. The 12th and 13th sections both embrace all personal property of every kind, by their express words, without any express limitation or qualification—the first saying "such real and personal estate as they (the city) may designate," and the second, "such personal estate of each of said inhabitants, (of Lexington) whether in goods, *stocks*, manufactories, or *other property*, that may be designated for taxation by the said mayor and councilmen." These clauses certainly refer to and embrace all property that is personal, and is either actually or constructively in Lexington, and not either legally or actually elsewhere, and belongs to a citizen of Lexington, and there residing. and the words "whether in goods, *stocks*, &c., do not qualify the universality of the words "such personal estate," as may be designated by the mayor and council, but rather show that nothing personal should be

exempt, even though it should be "stock" in a bank, insurance company, road, or other concern. Second. But if the principle of *ejusdem generis* could be applied as a constructive restriction, even that process of construction would not exclude debts. To assume that it should would be begging the question, for we insist that personal stocks, like debts, have no actual *situs*, and therefore must be adjudged to be wherever the owner lives. Even personal stocks must be transferred according to the law creating them—and this may be local—but the property in such stocks is as incorporeal, as incapable of actual *situs*, and as personal and ubiquitous as ordinary debts. And we deem it quite clear that stock owned by a resident of Lexington, in the Frankfort or in the Louisville railroad, could not be taxed by Frankfort or Louisville, but might be taxed by Lexington as the personal property of its own citizen, and constructively within its limits; otherwise, having no other *locale* than that of the owner, it would not be taxable by any local authority for any municipal purpose.

In addition to the express and explicit provisions of the statute, as herein before expounded, we venture to suggest that policy and equal justice would bring debts due to citizens of Lexington within the circle of taxable property. Our money lenders—in other words, our creditors—are generally our wealthiest citizens, and derive more security from the city police, and more enjoyments from city improvements, than the debtor or poorer classes. And it is right that government should distribute its burthens on the true *ad valorem* principle, according to the means and the interests protected. The legislature having adopted this principle for Kentucky, had an equal motive to extend it to Lexington, and consequently, as it had subjected to taxation for state purposes all the property of Kentucky, including choses in action, bonds, and other debts due to a Kentuckian, by any debtor here or elsewhere, it might reasonably be expected to give Lexington, for its own local purposes, a discretionary

JOHNSON
vs.
CITY LEXINGTON

power to an equal extent over its own citizens and the debts due to them, and all other property belonging to them, and deemed to be within the municipal jurisdiction. In enacting the statute referred to as the authority for the tax now questioned, the legislature could have had no good reason for excluding debts from the range of the taxing power delegated to the city. We can neither see nor imagine any consistent motive for such exclusion. The words of the grant make no such exclusion; on the contrary, they include debts wherever the debtors may reside—the creditors residing in Lexington—because they include all personal property in Lexington of residents of Lexington, and all such debts are personal property, constructively and legally in Lexington, and no where else.

In imposing the tax on bonds the city has not disregarded the cardinal rule of uniformity. The tax is laid just as the state taxes the like property. The constitution, as judicially interpreted, requires uniformity. Then if Lexington has violated the rule of uniformity, the state has violated the constitution. Not so! A man's money or bonds should always be valued after deducting his liabilities. One who has nothing but money or bonds, his estate is that only which he owns after paying his debts. The tax is uniform; no man's bonds are taxed beyond what he is worth in that property, after deducting his liabilities—all in that category are taxed according to the same rule; so of those who own nothing. They are all taxed equally. But it is sufficient to repeat that, if the equalization law be constitutional, the city tax on bonds is legal so far as uniformity is concerned.

October 2.

Judge SIMPSON delivered the opinion of the court.

This case involves the question of the power of the mayor and councilmen of the city of Lexington to impose a tax upon the citizens, in the manner contemplated by so much of the following ordinance as requires them to list for taxation their money, notes, &c.,

which ordinance was adopted by the city council on the 24th day of March, 1854, viz:

2d. "That section 22, digested ordinances, be so amended as to read at the end thereof, that it shall be the duty of the assessor of this city, after having taken the list of all the property required by said section to be specifically listed, to require each one to deliver, on oath or affirmation, a statement or list of all his or her furniture, machinery, fixtures, watches, clocks, gold and silver plate, pianos, and other musical instruments, of which he or she may have been in possession on the day on which this ordinance takes effect, as owner, hirer, or agent, within the city; and said assessor shall assess the fair specie value of each item of property in such statement or list, and enter the items, their value, and the total of the whole in separate columns, and opposite the names of their respective owners, hirers, and agents. After said list is taken, the assessor shall then ask what said person was worth, from all other sources within the city, including the value of money, notes, and other personal property that may have been temporarily out of the city, on the day on which this ordinance takes effect, and shall enter said amount in a separate column: *Provided however*, the assessor shall take from the value of said property, not specifically listed, the amount of his and her indebtedness, and one hundred dollars."

The act to incorporate the city of Lexington was passed on the 7th of December, 1831. In December, 1850, an act was passed "to reduce into one, amend, and digest the acts and amendatory acts incorporating the city of Lexington." Both the original charter, and the act last referred to, contain the following provisions on the subject of taxation:

SEC. 12. "The mayor and councilmen shall have the power and authority to assess, levy, and collect taxes, on such real and personal estate as they may designate; but such taxation shall be uniform on every description of property assessed."

Sec. 13. "The city assessor may, with the advice and consent of the board of councilmen, appoint an assistant, if deemed necessary, and shall take in a list of all the taxable inhabitants within said city, separately, in each ward, and affix against each the amount of his, her, or their real estate within said city, and also the true and just value of such personal estate of each of said inhabitants, whether in goods, stocks, manufactories, or other property, that may be designated for taxation by the said mayor and councilmen, &c."

These are the only provisions in the city charter from which the power of taxation, assumed by the foregoing ordinance, is claimed to be derived.

By the first clause in the 13th section the real estate, to be listed for taxation, is expressly limited to that which is within the city. The second clause in the same section, which refers to the personal estate to be listed for taxation, does not contain such an express limitation, but we entertain no doubt that the legislature intended to confine the power of taxation by the city, to such personal estate as might be within it. It cannot be presumed that the legislature intended to invest this municipal corporation with authority to impose a tax upon its citizens, which would extend in its operation, to the limits of the state, or even beyond them. A consideration of the object and design of the power granted, tends to exemplify the legislative intention, and renders it reasonably certain that the power conferred was only intended to embrace such personal estate as was within the city.

This construction is fortified by the language used in the two sections of the amended charter, which relate to the *fire* and *school tax*, the language used in each being identical with the other, and is as follows, viz:

" That in addition to the taxes before provided, the mayor and council of the city of Lexington shall have the authority, in each year, to levy an additional *ad valorem tax* on the property within said city, not exceeding five cents on each one hundred dollars of as-

*1. The 13th section of the act December, 1850, entitled, "an act to reduce into one, amend, and digest the several acts and amendatory acts incorporating the city of Lexington," tho' containing no express limitation, does not confer a power upon the city corporation to tax personal estate without the city, but is confined to property within the city.*

sessed property, which shall be collected in the same manner as other taxes are, by law, collected in said city, and that the fund arising therefrom shall, &c."

This additional tax on the property within the city was evidently intended merely as an increase of the tax, on the same property that was to be assessed under the general power of taxation, for the purpose of defraying the expenses of the city government. No discrimination was contemplated or designed to be made in the description or species of property to be taxed, but the same property was to be taxed for both purposes. As then this additional tax was expressly limited to the property within the city, the inference is very strong that the legislature understood the general grant of power on the subject of taxation, to be confined to the property within the city, and did not intend that the power should embrace any property situated elsewhere.

If then this be the proper construction of the charter, did the legislature intend that this power of taxation should extend to and embrace the money, notes, and choses in action of the persons residing within the city, without any regard to the residence of the debtors, or the place where the money might be deposited; or, in other words, that it should apply to any other estate or property than that which is visible, and that which is specified in the charter itself.

When the original charter was granted in 1831, the state had not adopted the principle of taxation by which the money and choses in action of the citizen are now made liable to taxation, *sub modo,* under the provisions of what has been denominated "the equalization law." It cannot, therefore, be presumed that the state then intended to confer on the city authorities a power of taxation which it did not itself exercise. The first act to equalize taxation was passed in February, 1837. It required all persons, when giving in their lists of taxable property, to fix, on oath, a sum sufficient to cover what they were respectively worth, from all sources, on the day to which the lists

related, exclusive of the property required by law to be listed for taxation, not computing the first three hundred dollars in value, nor lands not within this state, nor other property out of this state subject to taxation by the laws of the country where situated. The sum to be excluded from the computation has been reduced by subsequent statutes.

The charter, as amended, contains no other power with respect to the subject matter of taxation, than was contained in the charter of 1831. The language of both acts, so far as they relate to this matter, are the same. If this power was not conferred by the original charter, it cannot by any fair rule of interpretation, be assumed that it was conferred by the same language in the amended charter. There is nothing in the amended charter that indicates an intention on the part of the legislature to extend the power of taxation by the city authorities, over any other personal estate or property or choses in action, than they previously had. If such an intention existed is it not reasonable to presume that it would have been expressly conferred, and not left to be assumed as a matter of implication? Besides, as the power of taxing a *sum* which is sufficient to cover what the person is worth, from all sources, exclusive of the property required by law to be listed for taxation, is only exercised by the state itself, *sub modo*, and with qualifications, the presumption cannot be resisted, that the legislature would, had it intended to confer this power upon the city authorities, have prescribed the mode in which it was to be exercised.

2. The power of the city to tax for corporate purposes is the same as for *fire* and *school* purposes, upon the property within the city.

In what manner is this power to be exercised by the corporation, in the absence of all directions in is charter on the subject? Is it to be done in analogy to the provisions of the law of the state regulating the same matter? If so, would not the residents of the city be required to fix a sum sufficient to cover what they were respectively worth, from all sources, exclusive of the property required by law to be taxed within the city? Would not this embrace all the estate, of

every description, lands, slaves, and personalty out of the city, owned by them any where in the state? This would be in exact analogy to the provisions of the general law upon the subject, and it illustrates very forcibly the correctness of our conclusion, that the legislature would not have conferred such a power without defining it, and prescribing the manner in which it was to be carried into effect, and consequently that no such power was intended to be, or was in fact granted.

We think the power of taxation conferred on the city authorities by the charter extends only to the property and estate within the city, and that the property referred to is *visible property*, actually situated within the city, and not such estate as has merely a legal or constructive *status*, and which is regarded, for some purposes, as being with its owner, wherever he is domiciled. Money and choses in action constitute estate of this character, and by a legal fiction, are considered as having a locality wherever the person resides to whom they belong. Debts, however, are not even now regarded as the subjects of taxation, properly speaking, but their intrinsic value only is liable to be taxed. No estate, except such as is *actually* within the city, or merely absent for temporary purposes, which is *visible* in its character, or is specified in the charter, is in our opinion, subject to taxation by the city authorities.

Property and personal estate, according to the ordinary and popular signification of these words, do not mean money and choses in action, and they are frequently used, even in legal instruments, without having any such meaning. An execution is directed to be levied on the defendant's estate, yet the word estate, as here used, does not embrace *choses in action*. Many other similar examples might be given in which the terms personal property and personal estate are not regarded as including debts and other choses in action, and we think it very clear that these terms did not, as used in the original charter, mean anything

3. The power of taxation conferred by the legislature upon the city of Lexington, extends only to the property within the city, which means visible property, actually situated within the city, and not such property as has merely a legal constructive *status*, and which for some purposes, is regarded as being with its owner, wherever he may be.

4. The terms *personal property* and *personal estate*, as used in the Lexington city charter, does not embrace debts and other choses in action, but embrace only visible property. (4 *B. Monroe.* 449.)

but visible property; and as precisely the same language is used in the amended charter, we think it should have the same meaning that it had when first used. In the case of the *Bank of the United States, &c. v. Huth,* 4 *B. Monroe,* 449, it was said by the court that the words "*real* or *personal estate,*" used in the statute requiring mortgages to be recorded, do not necessarily embrace *choses in action,* or claims for debts, and are often used in common parlance, to express estate or property in possession in contradistinction to a right in action.

The *justice* or the *expediency* of the grant of a power to the city corporation, to impose a tax on the money, bonds, &c., of the citizens residing within its limits, is not a question for our consideration; the only thing we have to determine is, whether such a grant has been made; and we are of opinion that the legislature did not intend to invest the city corporation with this power, by any of the provisions of its charter.

The question we have considered, was submitted by the parties to the judge of the Fayette circuit court, on an agreed case. That court decided that this tax was legal and valid, and that the city authorities had power to impose it. That judgment we deem erroneous.

Wherefore, the judgment is reversed, and cause remanded that a judgment may be rendered for the plaintiff, according to the agreement of the parties.